UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

NATIONAL UNION FIRE INSURANCE )
COMPANY OF PITTSBURGH, PA,    )
                              )
       Plaintiff,             )    Case No. 2:09-cv-00783-GMN-GWF
                              )
vs.                           )    **ORDER**
                              )
SHARP PLUMBING,               )    **Motion to Compel - #146**
                              )
       Defendants.            )
_____)

This matter is before the Court on Third-Party Defendant National Fire & Marine Ins. Co.'s Motion to Compel (#146), filed on May 29, 2012; Third Party Plaintiff Sharp Plumbing, Inc.'s Opposition to Motion to Compel (#147), filed on May 29, 2012; and Third-Party Defendant National Fire & Marine Ins. Co.'s Reply in Support of its Motion to Compel (#149), filed on June 1, 2012. The Court conducted a hearing in this matter on June 21, 2012.

**BACKGROUND**

This case involves a dispute whether a general liability insurance policy issued by National Fire & Marine Ins. Co. ("National Fire") to Sharp Plumbing, Inc. ("Sharp") provided coverage for Sharp's liability resulting from the installation of defective plumbing fittings in several hundred homes in Southern Nevada. National Fire retained counsel to defend Sharp in an underlying action brought on behalf of the homeowners in whose residences the defective fittings were installed. National Fire paid for Sharp's defense through trial and appeal, subject to a reservation of rights that the insurance policy did not provide coverage for the claims. The trial resulted in a $8,749,400.00 verdict against Sharp. Following the trial, National Fire settled the case for $1,269,182.80.

Sharp alleges that National Fire breached the insurance contract and acted in bad faith by not settling the underlying lawsuit prior to trial. As a result, Sharp alleges that it was compelled to participate in a lengthy trial which resulted in a verdict that decimated Sharp's business. *Amended Third Party Complaint (#56)*, ¶74. Sharp alleges that it was forced to terminate nearly all of its employees because local builders were unwilling to do business with Sharp as a result of the verdict and the anticipated judgment that Sharp was unable to satisfy. ¶75. Sharp also alleges that National Fire's conduct prevented it from obtaining a contract to perform the plumbing refit work on residences that were the subject of the underlying lawsuit. ¶¶76-77. Sharp further alleges that it was forced to incur attorney's fees and costs and was forced into bankruptcy because of National Fire's breaches of duty. ¶94. Sharp seeks the recovery of compensatory and punitive damages for breach of contract, tortious breach of the covenant of good faith and fair dealing, and for violations of the Nevada Unfair Claims Practices Act. National Fire has asserted a counterclaim to recover the $1,269,182.80 it paid to settle the underlying lawsuit on Sharp's behalf on the grounds that the jury verdict against Sharp was for damages not covered by the insurance policy.

## **DISCUSSION**

National Fire served interrogatories and requests for production of documents on Sharp relating to Sharp's damages claims and allegations. Interrogatory No. 1 asked Sharp to:

> Describe in detail all damages that YOU seek from NATIONAL FIRE in this action, including but not limited to the computation of damages that was required to be provided pursuant to Rule 26(a)(1)(a)(iii).

The first paragraph of Sharp's answer to this interrogatory stated:

> As detailed in Sharp Plumbing's initial disclosures, its damages are the subject of expert opinions which, under the existing schedule, are not due until February 17, 2012. Notwithstanding the foregoing, however, Sharp Plumbing expressly notes that its damages include, without limitation, the following sums:

*Motion to Compel (#146), Exhibit D.*

The answer then stated that from June 2, 2006 when National Fire issued its reservation of rights letter, Sharp Plumbing's owner, Henry Sharp, made himself available and rendered assistance to National Fire and its retained counsel. Sharp stated that it was therefore entitled to

2

"Supplemental Payments" coverage under the insurance policy which provides that the insurer will pay all reasonable expenses incurred by the insured at the insurer's request in the investigation or defense of the claim or suit, *"including actual loss of earnings up to $250 a day because of time off work."* (Emphasis added by the Court). Pursuant to this provision, Sharp seeks $298,500.00. Sharp calculated the $298,500.00 by adding the total number of days from June 3, 2006 through February 28, 2011 that Mr. Sharp or other Sharp employees allegedly devoted time to the underlying claim or lawsuit and then multiplying those days by $250. Sharp also seeks $149,640.00 in attorney's fees for the services of independent counsel in the underlying action. Sharp's counsel in this action also served as Sharp's independent counsel in the underlying action. *Id.*

        The first paragraph of Sharp's answer to Interrogatory No. 1 indicates that its claims for actual loss of earnings and attorney's fees under the Supplemental Payments coverage is not necessarily all of the damages it seeks in this action. Sharp's answer also does not state whether it suffered actual loss of earnings on each day for which $250 is claimed and, if so, how that actual loss of earnings was determined.

        Answers to interrogatories must be complete, explicit and responsive. If a party cannot furnish details, it should say so under oath, say why and set forth the efforts it used to obtain the information. A party cannot plead ignorance to information that is from sources within its control. Information in the hands of a corporate party's agents and others within its control must be supplied. *Milner v. National School of Health Technology*, 73 F.R.D. 628, 632-33 (E.D.Pa. 1977), citing 4A Moore's Federal Practice P 33.26; *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 631 (D.Colo. 2007). Some, or perhaps all, of the information on which Sharp relies to support its claim for actual loss of earnings is contained in a Declaration of Henry Sharp, dated April 12, 2012. Sharp, however, is required to set forth such information in its answer to Interrogatory No. 1 and may not simply refer National Fire to Mr. Sharp's declaration or to information contained in pleadings or other discovery. *See Union Pacific R. Co. v. Larkin*, 229 F.R.D. 240, 243 (D.N.M. 2005) and *Mulero-Abreau v. Puerto Rico Police Dept.*, 675 F.3d 88, 93 (1st Cir. 2012). The Court therefore orders Sharp to supplement its answer to Interrogatory No. 1

3

and provide a full and complete description of its alleged damages.

Interrogatory No. 2 asked Sharp to "[d]escribe in detail all facts supporting YOUR claim to entitlement of compensatory damages from NATIONAL FIRE in this ACTION." Sharp answered this interrogatory by referring to its response to Interrogatory No. 1. Because Interrogatory No. 2 arguably asks the same question, or a subset of the same question, as Interrogatory No. 1, Sharp's response will be sufficient so long as its answer to Interrogatory No. 1 provides a detailed description of its compensatory damages claim.

Interrogatory No. 3 asks Sharp to describe in detail all facts supporting its claim for punitive damages against National Fire. Punitive damages may be awarded against an insurer who acts in bad faith regarding its obligations where the misconduct rises to the level of oppression, fraud or malice. *See* Nevada Revised Statute (NRS) 42.005. Although the focus of punitive damages is on the defendant's conduct, the extent of injury or harm caused by that conduct is also a relevant factor in the award of punitive damages. *See Albert H. Wohlers & Co. v. Bartgis*, 114 Nev. 1249, 1267, 969 P.2d 949, 962 (1998) ("In determining whether a punitive damages award is excessive . . . we will consider a variety of factors including . . . vulnerability and injury suffered by the offended party . . . .").

Sharp's answer to Interrogatory No. 3 lists in a general manner National Fire's alleged wrongful acts that support its claim for punitive damages. Although the Amended Third Party Complaint alleges that National Fire's bad faith refusal to settle prior to trial caused the destruction of Sharp's business and forced it into bankruptcy, these alleged injuries are not mentioned in Sharp's answer to Interrogatory No. 3. The Court therefore orders Sharp to supplement its answer to Interrogatory No. 3 and provide a full and complete description of National Fire's alleged conduct that supports an award of punitive damages, *including* a description of the injury or harm that Sharp allegedly suffered as a result of such conduct.

Interrogatory No. 4 asks Sharp to identify every person who has knowledge of its claims for damages against National Fire. According to National Fire, all of the individuals listed in Sharp's answer to the interrogatory are affiliated with National Fire. Obviously, Henry Sharp or other persons employed by or affiliated with Sharp Plumbing have knowledge of Sharp's damages

claims. Sharp is therefore ordered to supplement its answer to Interrogatory No. 4 and identify all individuals, reasonably known to it or its counsel, who have knowledge of its damage claims.

The main thrust of National Fire's motion is to compel Sharp to produce documents relevant to its claims for compensatory or punitive damages. Request Nos. 1-31 seek documents relating to Sharp's alleged damages in a variety of ways. *See Motion to Compel (#146), pgs. 7-19*. Requests Nos. 7-13 request documents relating to Sharp's specific allegations that National Fire's conduct damaged its business, forced it to terminate nearly all of its employees, and deprived it of the opportunity to perform plumbing re-fit work on the homes that were the subject of the underlying action. Sharp objected to these requests as irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. In this regard, Sharp stated that it is not advancing claims for lost profits and business impairment. It appears, however, that Sharp has not waived the option of introducing evidence at trial regarding these allegations in support of its claim for punitive damages. Accordingly, the Court overrules Sharp's relevancy objections and orders that it respond to the requests.

Documents relating to Sharp's past and present financial or business condition are relevant to its claim for nearly $300,000 in alleged actual loss of earnings pursuant the Supplemental Payments coverage of the policy. Such information is also relevant to Sharp's claims for general compensatory damages and punitive damages. Because National Fire's requests for production of documents are duplicative, the Court orders Sharp to produce financial or business documents responsive to these requests, as a whole. Sharp should, however, identify documents by bates number ranges or other means of identification that are responsive to particular requests, such as requests for documents relating to Sharp's bankruptcy or documents relating to business or financial harm that is specifically alleged in the amended third party complaint.

Sharp is also ordered to produce complete and unredacted records relating to its claim for attorney's fees and costs pursuant to the Supplemental Payments coverage of the policy, or as damages resulting from National Fire's alleged bad faith. Such documents include, but are not necessarily limited to, attorney retainer agreements, billing invoices, correspondence relating to Sharp's attorney's fees and other legal expenses, and payment records such as cancelled checks or

bank statements.  The attorney fee billing records shall be produced subject to a protective order that neither party shall provide the confidential information contained in such records to third persons or entities who are not parties or representatives or agents of the parties, or witnesses who may be required to review the records for purposes of testimony at deposition or trial.  This order does not, however, require Sharp to produce confidential attorney-client communications between Sharp and its counsel relating to Sharp's claims against National Fire in this action.  Such records or entries may be withheld or redacted from the produced documents.  Sharp shall provide National Fire with a privilege log regarding all withheld documents or redactions based on a claim of privilege.

## CONCLUSION

**IT IS HEREBY ORDERED** that Third-Party Defendant National Fire & Marine Ins. Co.'s Motion to Compel (#146) is **granted** in accordance with the foregoing provisions of this order.

**IT IS FURTHER ORDERED** that Third Party Plaintiff Sharp Plumbing, Inc. shall provide its supplemental discovery responses on or before **July 6, 2012**.

DATED this 27th day of June, 2012.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge