UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| Sharp Plumbing, Inc., ) | | |
| ) | | |
| Third-Party Plaintiff, ) | Case No.: 2:09-cv-00783-GMN-GWF | |
| vs. ) | | |
| ) | **ORDER** | |
| National Fire & Marine Insurance Company, ) | | |
| ) | | |
| Third-Party Defendant. ) | | |
| _____ ) | | |
| ) | | |
| National Fire & Marine Insurance Company, ) | | |
| ) | | |
| Counter-Claimant, ) | | |
| vs. ) | | |
| ) | | |
| Sharp Plumbing, Inc., ) | | |
| ) | | |
| Counter-Defendant. ) | | |
| _____ ) | | |

The litigation history of this action arising out of insurance claims spans four years, and the sole remaining parties are Third-Party Plaintiff/Counter-Defendant Sharp Plumbing, Inc. ("Sharp") and Third-Party Defendant/Counterclaimant National Fire & Marine Insurance Company ("National Fire").  Pending before the Court is National Fire's Motion for Summary Judgment as to its Counterclaims against Sharp (ECF No. 183), and Motion for Summary Judgment as to Sharp's Amended Third-Party Complaint (ECF No. 184).  Also before the Court is Sharp's Motion for Summary Judgment (ECF No. 188).  All motions are fully briefed, and the Court heard oral arguments from the parties on December 20, 2013.

I.  **BACKGROUND**

Sharp is one of several plumbing subcontractors that installed Kitec plumbing fittings manufactured by IPEX, Inc., in Clark County, Nevada.  As of 2006, several actions had been

filed in state court by Nevada homeowners claiming damages caused by allegedly defective Kitec fittings. (Order Granting Mot. Certify Class, Oct. 16, 2006, Ex. F to RJN, ECF No. 187-7.)  As a result, insurance companies for plumbing contractors such as Sharp began to define and assert their obligations under the relevant insurance policies, and coverage disputes arose. [1]

The actions were subsequently consolidated as a class action under the case name *In re Kitec Fitting Litigation*, No. A493302 ("the Underlying Action") and Sharp was among the named defendants. (*Id.*)  In March 2009, the class plaintiffs settled their claims against IPEX, Inc., and the litigation proceeded with a final amended complaint filed in August 2009 naming multiple builders and plumbing contractors as defendants. (Ninth Am. Compl., Ex. L to RJN, ECF No. 187-13.)  The only cause of action naming Sharp as a defendant in the class plaintiffs' Ninth Amended Complaint was for negligence. (*Id.* at 30–31.)

In May 2009, class plaintiffs in the Underlying Action settled with several of the builder defendants, and the builders assigned to the class plaintiffs all claims that these builders might have against Sharp. (*See* Mot. Determination of Amounts to Offset, 3–4, Ex. I to RJN, ECF No. 187-10.)

On May 1, 2009, National Union Fire Insurance Company of Pittsburgh, PA ("NUFIC Pittsburgh") initiated this action, requesting declaratory relief against Sharp and Classic Plumbing, Inc., another plumbing subcontractor named as a defendant in the Underlying Action. (ECF No. 1.)  On May 22, 2009, Sharp filed for Chapter 11 bankruptcy. (Voluntary

---

[1] These actions included:

*Quintero v. Classic Plumbing, Inc.*, Case No. 04-A-493302;
*Allstate Ins. Co. v. Classic Plumbing, Inc.*, Case No. 05-A-510543;
*Quintero v. IPEX USA, LLC*, Case No. 06-A-517493;
*Kozlowski v. IPEX, Inc.*, Case No. 06-A-518156;
*Plaster Development Co., Inc. v. Classic Plumbing, Inc.*, Case No. 06-A-523714;
*Quintero v. Woodside Homes of Nevada, Inc.*, Case No. 07-A-534939;
*Farmers Ins. Co. v. IPEX USA, LLC*, Case No. 07-A-540285; and
*Bankers Insurance Company v. IPEX USA, LLC*, Case No. 07-A-546383.

(Am. Third-Party Compl., 3:¶5, ECF No. 56; Order Granting Mot. Certify Class, Oct. 16, 2006, Ex. F to RJN, ECF No. 187-7.)

Petition, Ex. K to RJN, ECF No. 187-12.)

In the Underlying Action, a mandatory settlement conference was held on September 16, 2009, and the class plaintiffs initiated settlement negotiations with Sharp. (*See* Offer of Settlement and Compromise, Sept. 16, 2009, Ex. 8 to Ratz Decl., ECF No. 185-8.)

On September 25, 2009, NUFIC Pittsburgh filed a Notice of the bankruptcy court's order modifying the automatic stay "to permit that certain action pending in the United States District Court, District of Nevada . . . as case number 2:09-cv-00783-RCJ-GWF, and styled *National Union Fire Insurance Company of Pittsburgh, PA v. Sharp Plumbing, Inc. et. al. . . .* to proceed to conclusion without further leave or order of this Court." (ECF No. 10.)

Three days later, NUFIC Pittsburgh dismissed its claims against Classic Plumbing, Inc., and subsequently filed an amended complaint naming Sharp as the sole defendant. (Order, Sept. 30, 2009, ECF No. 12; Am. Compl., ECF No. 16.)  Sharp then asserted counterclaims against NUFIC Pittsburgh, and added third-party claims against National Fire without effecting service upon National Fire. (Answer, Countercl., Third-Party Compl., ECF No. 24; Summons, ECF No. 26; Stip. & Order, ECF No. 55.)

In December 2009, after a jury trial in the Underlying Action, a verdict was reached holding Sharp liable for negligence and awarding $8,749,400 in damages. (Reporter's Transcript of Jury Trial, Dec. 12, 2009, 187:11–18, Ex. B to RJN, ECF No. 187-3.)   However, the state court did not enter judgment at that time, and "Phase II" of the trial was begun in order to determine the amount of the settlement offsets and Sharp's responsibility for fees, costs, interest, and contribution. (*See* Mot. Determination of Amounts to Offset, 4–5, Ex. I to RJN, ECF No. 187-10.)  In January 2010, the class plaintiffs moved for entry of judgment against Sharp in the amount of $13,618,901.00. (*Id.*)

In March 2010, Sharp served National Fire with an Amended Third-Party Complaint (ECF No. 56), adding a fourth cause of action, and National Fire then filed an Answer and

Counterclaim (ECF No. 64).  Later, NUFIC Pittsburgh and Sharp dismissed all claims between them, and NUFIC Pittsburgh was dismissed from the action. (Order, Nov. 23, 2010, ECF No. 84.)

Over a year after the jury verdict, on January 10, 2011, the class plaintiffs in the Underlying Action moved for approval of a post-trial settlement that had been negotiated with defendants, and on February 25, 2011, the state court entered its final order approving the post-trial settlement. (Ex. A to RJN, ECF No. 187.)  As part of this settlement ("the Sharp Settlement"), National Fire paid $1,269,182.80 on Sharp's behalf, for allocation among three subclasses of plaintiffs. (*Id.* at 15.)

With the Court's leave, National Fire then amended its pleading to add a cause of action for reimbursement of the amount paid for the Sharp Settlement. (Order, March 18, 2011, ECF No. 88; Am. Answer and Countercl., ECF No. 89.)

Now, the sole operative pleadings before the Court are Sharp's Amended Third-Party Complaint against National Fire (ECF No. 56), National Fire's Amended Answer and Counterclaims (ECF No. 89), and Sharp's Answer (ECF No. 90).

Sharp alleges four causes of action against National Fire: (1) Declaratory Relief; (2) Breach of Contract; and (3) Breach of Implied Covenant of Good Faith and Fair Dealing; and (4) Negligence Per Se – Violations of NRS 686.310 *et seq*. (ECF No. 56.)  National Fire alleges two counterclaims: (1) Declaratory Relief; and (2) Reimbursement. (ECF No. 89.)

In December 2011, before the close of discovery, National Fire moved for summary judgment (ECF No. 112) as to its counterclaims, and Sharp responded with a request to complete discovery (ECF No. 121), which resulted in the Court's denial of National Fire's motion without prejudice. (Order, Aug. 31, 2012, ECF No. 165.)

Here, in their summary judgment motions, the parties ask the Court to construe the terms of the insurance policy contract to determine the parties' rights and responsibilities relating to

1 the Underlying Action. [2]

2 **II.   LEGAL STANDARD**

3         The Federal Rules of Civil Procedure provide for summary adjudication when the

4 pleadings, depositions, answers to interrogatories, and admissions on file, together with the

5 affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant

6 is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that

7 may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

8 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable

9 jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if

10 reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict

11 in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th

12 Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A

13 principal purpose of summary judgment is "to isolate and dispose of factually unsupported

14 claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

15         In determining summary judgment, a court applies a burden-shifting analysis.  "When

16 the party moving for summary judgment would bear the burden of proof at trial, it must come

17 forward with evidence which would entitle it to a directed verdict if the evidence went

18 uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing

19 the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.*

20 *Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In

21 contrast, when the nonmoving party bears the burden of proving the claim or defense, the

22 moving party can meet its burden in two ways: (1) by presenting evidence to negate an

23 essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving

24

25

---

[2] Although not specified in the motion, the claims for which Sharp requests summary judgment in its favor appear to include its own claims as well as National Fire's counterclaims.

party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.   <u>DISCUSSION</u>

First, the Court notes that the parties' causes of action are interrelated, and that questions of mootness exist that may require resolution by the Court. In its motion, National Fire argues that "the majority of Sharp's allegations are now moot" because Sharp "did not amend its

1    allegations after National Fire paid a settlement on Sharp's behalf in the Underlying Action,"

2    and that therefore "the Complaint is premised upon a host of outdated and incorrect

3    allegations." (Mot. Summ. J., 1:11–17, ECF No. 184.)  National Fire also argues that Sharp

4    inappropriately includes allegations relating to Nev. Rev. Stat. § 686A.310(1) in its tort cause

5    of action for breach of the implied covenant of good faith and fair dealing, even after its

6    amendment adding an Unfair Claims Practices cause of action. (*Id*. at 1 n.1.)  Sharp does not

7    appear to concede that any of its causes of action are moot. (*See* Resp., ECF No. 184.)

8         Below, the Court addresses these issues after summarizing the undisputed facts upon

9    which resolution of the motions depends.

10        **A.   Undisputed facts**

11             1.   The Policy

12                  *a.   Basic Coverage and Limitations.*

13        National Fire issued a commercial general liability policy of insurance to Sharp, No.

14   72LPN251524 ("the Policy"). (Ex. 1 to Ratz Decl., ECF No. 185-1; Ex. 1 to Sharp's Mot.

15   Summ. J., ECF No. 188-1.)  The original policy period was effective September 1, 2003 –

16   September 1, 2004, and was extended twice, to expire on September 1, 2006. (*Id*. at

17   Commercial General Liability - Declarations, NF035048[3]; General Change Endorsement No. 4,

18   NF035000; General Change Endorsement No. 6, NF034995.)  Under the Policy's Commercial

19   General Liability Coverage Form, the basic coverages are set forth pursuant to the parties'

20   agreement. (*Id*. at NF035061.)

21        National Fire agreed to pay certain sums to Sharp, described as:

22        those sums that the insured becomes legally obligated to pay as damages because
          of "bodily injury" or "property damage" to which this insurance applies.

23

24   (*Id*. at NF035061.)

25
     _____

     [3] As submitted to the Court by the parties, the Policy is numbered from NF34990–NF035100, and for ease of
     reference the Court refers to these page numbers when citing to the Policy.

"Bodily injury" under the Policy "means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (*Id*. at NF035073.)

"Property damage" is defined as:

    a.  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.  Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(*Id*. at NF035075.)

One important limitation under the terms of the Policy provides that:

This insurance applies to "bodily injury" and "property damage" only if . . . The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory".

(*Id*. at NF035061.)

An "occurrence" under the Policy is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id*. at NF035074.)

Therefore, under the Policy, in relation to the Underlying Action, National Fire is obligated to pay sums that Sharp became legally obligated to pay as damages because of "property damage" as defined in the Policy; and construction of the term "property damage" under the Policy is necessary so as to determine whether any damages Sharp is legally obligated to pay are "because of" this "property damage."[4]

Also, if "property damage" is not caused by an accident that takes place in the "coverage territory," then the insurance under the Policy does not apply to that "property damage."

/ / /

---

[4] Sharp does not appear to allege that it is entitled to coverage on the basis of "bodily injury," and even if so, the Court finds no support for a different outcome on this basis.  Accordingly, the Court omits this term from the analysis in this Order.

     *b.  Basic Exclusions.*

The basic exclusions under the Policy are listed under the following headings:

    a.  Expected or Intended Injury
    b.  Contractual Liability
    c.   Liquor Liability
    d.  Workers' Compensation and Similar Laws
    e.   Employer's Liability
    f.   Pollution
    g.  Aircraft, Auto or Watercraft
    h.  Mobile Equipment
    i.   War
    j.   Damage to Property
    k.  Damage to Your Product
    l.   Damage to Your Work
    m.  Damage to Impaired Property or Property Not Physically Injured
    n.  Recall of Products, Work or Impaired Property
    o.  Personal and Advertising Injury

(*Id*. at NF035062–NF035065.)

Among these basic exclusions, under the heading "Damage to Property," is exclusion of coverage for "property damage" to:

That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

(*Id*. at NF035064.)

"Your work" under the Policy means:

(1)  Work or operations performed by you or on your behalf; and
(2)  Materials, parts or equipment furnished in connection with such work or operations.

(*Id*. at NF035076.)

Coverage is also excluded under the heading "Damage to Impaired Property or Property Not Physically Injured," for:

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

> (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
>
> (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

(*Id.* at NF035065.)

"Impaired property" under the Policy means:

tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
> a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
> b. You have failed to fulfill the terms of a contract or agreement;
> if such property can be restored to use by:
> a. The repair, replacement, adjustment or removal of "your product" or "your work"; or
> b. Your fulfilling the terms of the contract or agreement.

(*Id.* at NF035073.)

Also, coverage is excluded for "Recall of Products, Work or Impaired Property":

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

> (1) "Your product";
> (2) "Your work"; or
> (3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

(*Id.* at NF035065.)

### c. *Policy Limits & Deductible.*

The Policy provides for a $2,500 deductible "per claim" for coverage of "property

damage liability," and specifies that National Fire's obligation "to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts." (*Id.* at Deductible Liability Insurance, NF035051.)  Further, the deductible for "property damage" applies "to all damages sustained by any one person because of 'property damage,'" and the term "person includes an organization." (*Id.*)

The policy limits were $1 million each occurrence, $2 million general aggregate and $2 million products-completed operations aggregate each year. (*Id.* at Commercial General Liability - Declarations, NF035048.)

> ### d.  *Duty to Defend.*

Regarding the duty to defend against suit, the Policy defines "suit" and describes the rights and obligations of National Fire:

> "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged.

(*Id.* at NF035075.)

> We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

(*Id.* at NF035061.)

Also, under the Policy, "[t]he terms of this insurance [including the right and duty to defend]. . . apply irrespective of the application of the deductible amount." (*Id.* at Deductible Liability Insurance, NF035052.)

### 2.  Sharp's tender of claims and National Fire's reservation of rights

In May 2006, National Fire received notice of the state court class action, *Quinterro v. Ipex USA, LLC*, No. A517493, filed against Sharp and other defendants, alleging damages from Kitec fittings. (*Quinterro* Claim Tender, Ex. 2 to Ratz Decl., ECF No. 185-2.)  On June 2,

2006, National Fire issued a Reservation of Rights letter in response to Sharp's tender of the *Quinterro* matter and subsequently assumed Sharp's defense in the Underlying Action. (Reservation of Rights Letter, Ex. 3 to Ratz Decl., ECF No. 185-3.)

On August 10, 2007, National Fire sent Sharp a letter regarding the state court complaint in *Classic Plumbing, Inc. v. IPEX, Inc.* (Am. Third-Party Compl., 31:¶12, ECF No. 56; Answer, 4:¶12, ECF No. 89.)  On September 28, 2007, National Fire sent Sharp a reservation of rights letter concerning a claim for the Littlefield residence in the Copperhead Trails development. (Am. Third-Party Compl., 31:¶13, ECF No. 56; Answer, 4:¶13, ECF No. 89.)  On December 28, 2007, National Fire sent a letter to Sharp which, according to Sharp, acknowledged receipt of the state court complaint in *IPEX, Inc. v. Del Webb Communities, Inc.*, and denied coverage for two single family residences. (Am. Third-Party Compl., 32:¶15, ECF No. 56; Answer, 5:¶15, ECF No. 89.)

### 3.   National Fire's defense of Sharp in the Underlying Action

In August 2009, a Ninth Amended Complaint was filed for the Underlying Action, alleging a claim for relief for negligence against the plumbing defendants, including Sharp. (Ninth Am. Compl., 30–34, Ex. L to RJN, ECF No. 187-13.)

The class plaintiffs alleged that the plumbing defendants owed them a duty of care and breached that duty by:

> negligently failing to install the Kitec plumbing system and Kitec fittings at issue in a manner consistent with the manufacturer's specifications, municipal codes, and/or standards of performance within the trade, as well as failing to use materials and/or parts that are capable of performing in a defect-free manner.

(*Id.* at 31:¶190.)

In September 2009, a mandatory settlement conference was held in the Underlying Action, and the class plaintiffs tendered a settlement demand of $995,000.00 "upon Sharp Plumbing, Inc. for the Kitec plumbed homes that fall within the National Fire & Marine

Insurance Company policy Number 72LPN251524." (Offer of Settlement and Compromise, Sept. 16, 2009, ECF No. 202-1.)  Specifically, the demand was "for all Sharp plumbed homes that have a close of escrow date of 9-1-03 to 9-1-06, excluding Sharp plumbed homes that are covered by Builder Wrap Insurance Policies," which class counsel determined was 934 homes. (*Id.*)  Counsel for National Fire rejected that offer, and proposed a counter-offer of $400,000.00, which was rejected by counsel for class plaintiffs along with a renewed offer for a $995,000.00 settlement. (Confidential Settlement Communication, Oct. 22, 2009, ECF No. 202-4; Letter, Oct. 29, 2009, ECF No. 202-5.)  Counsel for National Fire did not accept that offer, and subsequent tenders of settlement, through the date of trial, were all rejected.  Sharp does not allege that it was ever prepared to pay any settlement amounts.

In December 2009, a verdict was reached after a jury trial in the Underlying Action, holding Sharp liable for negligence and awarding $8,749,400.00 in damages. (Reporter's Transcript of Jury Trial, Dec. 12, 2009, 187:11–18, Ex. B to RJN, ECF No. 187-3.)   In January 2010, the class plaintiffs moved for entry of judgment against Sharp in the amount of $13,618,901.00. (Mot. for Determination of Amounts to Offset from Jury Award, and for Award of Atty's' Fees, Costs, Pre-J. Interest, Post-J. Interest, and Contribution from Sharp Plumbing, 4–5, Ex. I to RJN, ECF No. 187-10.)  On January 10, 2011, the class plaintiffs moved for approval of a post-trial settlement that had been negotiated with defendants, and on February 25, 2011, the state court entered its final order approving the post-trial settlement. (Ex. A to RJN, ECF No. 187.)  As part of this settlement ("the Sharp Settlement"), National Fire paid $1,269,182.80 on Sharp's behalf, for allocation among three subclasses of plaintiffs. (*Id.* at 15.)

## B.   <u>Declaratory Relief and Reimbursement</u>

### 1.   <u>Legal Standard</u>

The Federal Declaratory Judgment Act and Rule 57 of the Federal Rules of Civil

1   Procedure provide a mechanism by which parties may obtain declaratory relief.

2       "In a case of actual controversy within its jurisdiction," and with certain exceptions, a

3   federal court, "upon the filing of an appropriate pleading, may declare the rights and other legal

4   relations of any interested party seeking such declaration, whether or not further relief is or

5   could be sought," and "[a]ny such declaration shall have the force and effect of a final

6   judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201.  "The existence of

7   another adequate remedy does not preclude a declaratory judgment that is otherwise

8   appropriate." Fed. R. Civ. P. 57.

9           2.   Analysis

10      Here, the parties agree that an actual, justiciable controversy exists pursuant to 28 U.S.C.

11  § 2201 as to National Fire's obligations under the Policy relating to the Underlying Action.

12      National Fire seeks an order declaring that it has no duty to indemnify Sharp for

13  amounts awarded against Sharp in the Underlying Action and no obligation to pay the Sharp

14  Settlement. (Countercl., 32:¶33.)  Also, National Fire seeks an order requiring Sharp to

15  reimburse National Fire for the monies paid by National Fire on Sharp's behalf to resolve

16  Sharp's liability in the Underlying Action. (*Id.* at 32:¶¶35–37.)

17      Sharp seeks an order compelling National Fire to: (a) provide coverage for all claims,

18  actions and causes of action asserted against Sharp in the Underlying Action within the Policy;

19  (b) provide a defense to Sharp regarding the resolution of all such matters; (c) tender all sums

20  necessary to fully protect Sharp's interests without regard to Sharp's limits; and (d) reimburse

21  Sharp for all attorney's fees and costs incurred associated with its pleas for assistance and

22  coverage. (Am. Third-Party Compl., 43:¶95.)   Sharp's pleading was filed after the jury verdict

23  but prior to the settlement, and was not amended to account for the changed circumstances.

24      Here, the Court finds that summary judgment is appropriate as to construction of the

25  terms of the Policy so as to determine the parties' obligations.  As discussed below, the Court

1  finds that the terms of the Policy are not ambiguous, that National Fire is entitled to an order

2  declaring that it has no duty to indemnify Sharp or to pay the Sharp Settlement, and that Sharp

3  must reimburse National Fire.

4  ### C.   Breach of Contract

5  Sharp alleges damages for breach of contract against National Fire in relation to the

6  Policy, claiming that National Fire breached the parties' agreement by failing to provide

7  coverage and limit Sharp's exposure to Sharp's assigned deductible obligation. (Am. Third-

8  Party Compl., 43–44:¶¶97–101.)  The parties do not disagree as to the enforceability of the

9  Policy, but only as to its terms and related duties.

10  ### 1.   Legal Standard

11  In Nevada, "[a] breach of contract may be said to be a material failure of performance of

12  a duty arising under or imposed by agreement." *Calloway v. City of Reno*, 993 P.2d 1259, 1263

13  (Nev. 2000).  Generally, questions of contract construction are questions of law suitable for

14  determination by summary judgment in the absence of ambiguity or other factual complexities.

15  *Ellison v. Cal. State Auto. Ass'n*, 797 P.2d 975, 977 (1990).  "[A]bsent some countervailing

16  reason, contracts will be construed from the written language and enforced as written." *Id.*

17  "Summary judgment is appropriate when a contract is clear and unambiguous, meaning that the

18  contract is not reasonably susceptible to more than one interpretation." *Univ. of Nev., Reno v.*

19  *Stacey*, 997 P.2d 812, 814 (Nev. 2000).  "Whether or not a document is ambiguous is a

20  question of law for the court." *Margrave v. Dermody Props., Inc.*, 878 P.2d 291, 293 (Nev.

21  1994).  "[W]here two interpretations of a contract provision are possible, a court will prefer the

22  interpretation which gives meaning to both provisions rather than an interpretation which

23  renders one of the provisions meaningless." *Quirrion v. Sherman*, 846 P.2d 1051, 1053 (Nev.

24  1993) (per curiam).

25  Under Nevada law, the language of an insurance policy is broadly interpreted in order to

afford the greatest possible coverage to the insured, because an insurance policy is a contract of adhesion. *United Nat'l Ins. Co. v. Frontier Ins. Co., Inc.*, 99 P.3d 1153, 1156 (Nev. 2004). Also, because an insurance policy may restrict coverage only if the policy's language clearly and distinctly communicates to the insured the nature of the limitation, any ambiguity or uncertainty in an insurance policy must be construed against the insurer and in favor of the insured. *Id.*  However, the language of an insurance policy will be given its plain and ordinary meaning from the viewpoint of one not trained in the law, and will not be rewritten if its provisions are otherwise unambiguous. *Id.* at 1157.  "The question of whether an insurance policy is ambiguous turns on whether it creates reasonable expectations of coverage as drafted." *Id.*

Where a contract is ambiguous, requiring a court to resort to extrinsic evidence to ascertain the intention of the parties, summary judgment is inappropriate in the face of contradictory or conflicting evidence. *Margrave*, 878 P.2d at 293.

2.   <u>Analysis</u>

Here, the Court finds that the terms of the Policy are clear and unambiguous as to whether the Policy covers the sums Sharp is legally obligated to pay as a result of the class plaintiffs' claim for negligence in the Underlying Action.  The Court finds that the Policy does not cover these sums, and that National Fire owes no duty to indemnify Sharp for the settlement amount.

Even if the damage to the Kitec fittings alleged in the Underlying Action falls within the meaning of "property damage" under the Policy, the plain meaning of the exclusions under the Policy unambiguously excludes from coverage the sums awarded for Sharp's negligence in the Underlying Action.

Under the plain and ordinary meaning of the exclusions under the Policy, coverage is excluded for "property damage" to "[t]hat particular part of any property that must be restored,

repaired or replaced because 'your work' was incorrectly performed on it," where "your work"

means "[w]ork or operations performed by you or on your behalf[,] and . . . [m]aterials, parts or

equipment furnished in connection with such work or operations." (Commercial General

Liability Coverage Form, NF035064, NF035075.)  The class plaintiffs' allegations claim that

Sharp incorrectly performed work or operations, including the materials, parts or equipment

furnished in connection with this work, where they alleged Sharp's breach by:

> negligently failing to install the Kitec plumbing system and Kitec fittings at issue
> in a manner consistent with the manufacturer's specifications, municipal codes,
> and/or standards of performance within the trade, as well as failing to use
> materials and/or parts that are capable of performing in a defect-free manner.

(Ninth Am. Compl. at 31:¶190.)

Therefore, the Policy plainly excludes the jury's $8,749,400.00 damage award that was

based upon a finding of negligence under the class plaintiffs' complaint.  On this point, the

Policy is not susceptible to more than one reasonable interpretation, in that a trier of fact could

not reasonably find that Sharp's expectations of coverage for the jury award amounts were

reasonable from the face of the Policy.  This finding is persuasively supported by the reasoning

of the Ninth Circuit Court of Appeals and the District of Nevada in cases governed by state law

in other jurisdictions. *See New Hampshire Ins. Co. v. Vieira*, 930 F.2d 696, 697–99 (9th Cir.

1991); *Aetna Cas. & Surety Co. v. McIbs, Inc.*, 684 F.Supp. 246 (D. Nev. 1988), *aff'd mem.*,

878 F.2d 385 (9th Cir. 1989).

Finally, in relation to the amounts paid by National Fire on Sharp's behalf for the

settlement, the Court finds that the plain language of the Policy unambiguously excludes these

amounts from coverage, as well.  The amounts paid on Sharp's behalf for the settlement include

payment for resolution of the developer contractors' breach of contract claims against Sharp.

(*See* Settlement Agreement and Release, Ex. 17 to Ratz Decl., ECF No. 185-17.)  Under the

heading "Contractual Liability" of the Policy, claims for breach of a performance contract are

plainly excluded from coverage. (Commercial General Liability Coverage Form, NF035062.) Furthermore, the remaining fees and costs that are part of the settlement amount calculation are not within the scope of the Policy's coverage, and the parties do not appear to dispute this.

Therefore, the Court finds that summary judgment is appropriate as to Sharp's cause of action for breach of contract, National Fire's cause of action for reimbursement, and also as to the parties' requests for declaratory relief. For these causes of action, the Court finds that National Fire is entitled to judgment as a matter of law in its favor.

### D. <u>Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

Sharp also alleges damages for breach of the implied covenant of good faith and fair dealing in relation to the Policy. (Am. Third-Party Compl., 44–45:¶¶103–106.)

#### 1. <u>Legal Standard</u>

Nevada has "adopt[ed] the rule that allows recovery of consequential damages where there has been a showing of bad faith by the insurer." *U.S. Fidelity & Guar. Co. v. Peterson*, 540 P.2d 1070, 1071 (Nev. 1975). "Where an insurer fails to deal fairly and in good faith with its insured by refusing without proper cause to compensate its insured for a loss covered by the policy such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing." *Id*. "The duty violated arises not from the terms of the insurance contract but is a duty imposed by law, the violation of which is a tort." *Id*.

In this context, the Nevada Supreme Court has defined the tort of bad faith to include situations where an insurer has an actual or implied awareness of the absence of a reasonable basis for denying or delaying the benefits of an insurance policy. *Allstate Ins. Co. v. Miller*, 212 P.3d 318, 324 (Nev. 2009) (en banc); *Guaranty Nat. Ins. Co. v. Potter*, 912 P.2d 267, 272 (Nev. 1996) (rejecting the argument that breach of the implied covenant of good faith and fair dealing is not possible where an insurer paid the full policy limits under the insured's coverage); *see also Powers v. United Servs. Auto. Ass'n*, 962 P.2d 596, 604 (Nev. 1998), *reh'g denied*, 979

1    P.22d 1296 (Nev. 1999) (per curiam) ("To establish a prima facie case of bad-faith refusal to

2    pay an insurance claim, the plaintiff must establish that the insurer had no reasonable basis for

3    disputing coverage, and that the insurer knew or recklessly disregarded the fact that there was

4    no reasonable basis for disputing coverage.").

5            Judgment as a matter of law is inappropriate and "a jury question on insurer's bad faith

6    arises when relevant facts are in dispute or when facts permit differing inferences as to the

7    reasonableness of insurer's conduct." *United Fire Ins. Co. v. McClelland*, 780 P.2d 193, 197

8    (Nev. 1989) (per curiam).

9            The duty to indemnify arises when an insured "becomes legally obligated to pay

10    damages in the underlying action that gives rise to a claim under the policy." *United Nat'l Ins.*

11    *Co. v. Frontier Ins. Co., Inc.*, 99 P.3d 1153, 1157 (Nev. 2004)

12            The duty to defend is broader than the duty to indemnify, and there is no duty to defend

13    where there is no potential for coverage. *United Nat'l Ins. Co. v. Frontier Ins. Co., Inc.*, 99

14    P.3d 1153, 1158 (Nev. 2004). "A potential for coverage only exists when there is arguable or

15    possible coverage." *Id*. However, if there is any doubt as to whether the duty to defend arises,

16    this doubt must be resolved in favor of the insured, and once the duty to defend arises, it

17    continues throughout the course of the litigation. *Id*. "The purpose behind construing the duty

18    to defend so broadly is to prevent an insurer from evading its obligation to provide a defense

19    for an insured without at least investigating the facts behind a complaint." *Id*. "Determining

20    whether an insurer owes a duty to defend is achieved by comparing the allegations of the

21    complaint with the terms of the policy." *Id*.

22            "The duty to defend contains two potentially conflicting rights: the insurer's right to

23    control settlement discussions and its right to control litigation against the insured." *Allstate*

24    *Ins. Co. v. Miller*, 212 P.3d 318, 329 (Nev. 2009) (en banc). "The right to control settlement

25    discussions creates the duty of good faith and fair dealing during negotiations." *Id*.

The Nevada Supreme Court has held that "an insurer can be liable for bad faith failure to settle even where a demand exceeds policy limits if the insured is willing and able to pay the amount of the proposed settlement that exceeds policy coverage." *Id.* The Nevada Supreme Court elaborated:

> if there is a question of whether a settlement offer is within the policy limits or whether the insured has the ability or willingness to contribute to the offer's excess, then the issues "should be resolved in favor of the insured, unless the insurer can show by affirmative evidence that there was no realistic possibility for settlement within [policy] limits and that the insured would not have made any contribution to a settlement above that amount."

*Id.* (quoting 14 *Couch on Insurance 3d* § 203:18 (2005)).

In an unpublished order from the District of Nevada, the court held that "[t]he implied covenant requires the insurer to settle the case within policy limits when there is a substantial likelihood of recovery in excess of those limits." *Kelly v. CSE Safeguard Ins. Co.*, No. 2:08-cv-00088-KJD-RJJ, 2011 WL 4526769, at *4, 2011 U.S. Dist. LEXIS 111136, at *10 (D. Nev. Sept. 27, 2011) (citing *Murphy v. Allstate Ins. Co.*, 553 P.2d 584, 586 (Cal. 1976)).

 2. <u>Analysis</u>

Sharp alleges the following facts as evidence of National Fire's breach of the implied covenant of good faith and fair dealing:

A. Misrepresenting to Sharp Plumbing pertinent facts or insurance policy provisions relating to any coverage at issue in violation of NRS 686A.310(1)(a);

B. Failing to acknowledge and act reasonably promptly upon communications from Sharp Plumbing with respect to claims arising under the National Fire & Marine Policy in violation of NRS 686A.310(1)(b) and NAC 686A.665;

C. Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under the applicable Policy in violation of NRS 686A.310(1)(c);

D.  Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements had been satisfied in violation of NRS 686A.310(1)(d);

E.  Failing to effectuate prompt, fair and equitable settlements of Sharp Plumbing's claims once the liability of National Fire & Marine became reasonably clear in violation of NRS 686A.310(1)(e);

F.  Failing to provide promptly to Sharp Plumbing a reasonable explanation of the basis for the denial of its claim in violation of NRS 686A.310(1)(n);

G.  Denying Sharp Plumbing's claims after having accepted, covered and settled identical claims in the Underlying Action for LBM;

H.  Placing paramount importance on National Fire & Marine's own interests to the detriment of its insured, Sharp Plumbing;

I.  Adopting restrictive policy interpretations based upon inadequate, improper and/or a non-existent investigation;

J.  Failing to properly and timely communicate with Sharp Plumbing regarding its claims;

K.  Failing to properly hire, train, supervise, instruct and direct their employees and agents in connection with their dealings with Sharp Plumbing, investigation of the claim and determination of coverage under the Policy; and

L.  Failing to properly indemnify Sharp Plumbing for a covered loss.

(Am. Third-Party Compl., 44–45:¶104.)

First, the Court recognizes National Fire's argument that Sharp inappropriately includes allegations relating to Nev. Rev. Stat. § 686A.310(1) in its tort cause of action for breach of the implied covenant of good faith and fair dealing, even after its amendment adding an Unfair Claims Practices cause of action. (*See* Mot. Summ. J., 1 n.1, ECF No. 184.)  However, regardless of National Fire's apparent conflation of two separate causes of action, the Court

1   finds that National Fire is entitled to summary judgment in its favor as to Sharp's cause of

2   action for breach of the implied covenant of good faith and fair dealing.

3       Here, having considered the entirety of the parties' evidence, the pleadings, depositions,

4   answers to interrogatories, and admissions on file, the Court finds that Sharp has not presented

5   any competent or significantly probative evidence supporting its factual allegations that

6   National Fire committed any of these enumerated actions.  Because of this lack of evidence, the

7   Court cannot find that a reasonable jury could find in favor of Sharp as to this cause of action,

8   even drawing all reasonable inference in Sharp's favor.  Accordingly, there is no genuine

9   dispute of material fact and the Court must find that National Fire is entitled to summary

10  judgment in its favor as to this cause of action.

### E.   Unfair Claims Practices (alleged as Negligence Per Se)

12      Sharp alleges a cause of action against National Fire for negligence *per se*, claiming

13  violations of Nevada's insurance statute, specifically section 686A.310, governing unfair

14  practices in settling claims. (Am. Third-Party Compl., 46:¶¶108–109.)

### 1.   Legal Standard

16      Under this section of the Nevada Unfair Claims Practices Act, "an insurer is liable to its

17  insured for any damages sustained by the insured as a result of the commission of any act set

18  forth in subsection 1 as an unfair practice." Nev. Rev. Stat. § 686A.310(2).  This creates an

19  independent statutory cause of action.[5] *See Albert H. Wohlers & Co. v. Bartgis*, 969 P.2d 949,

20  960–61 (Nev. 1998) (per curiam) (analyzing violations of Nev. Rev. Stat. § 686A.310 as an

---

22  [5] The common law cause of action for negligence, including negligence *per se*, is not a recognized cause of
23  action for violations of section 686A.310 of Nevada Revised Statutes.  Negligence is a common law cause of
    action arising in tort, in which a plaintiff claims: "(1) the defendant owed the plaintiff a duty of care, (2) the
24  defendant breached that duty, (3) the breach was the legal cause of the plaintiff's injuries, and (4) the plaintiff
    suffered damages." *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012).  Negligence *per se* is a
    variation of this cause of action where duty and breach are established according to statutory provisions: "A
25  violation of statute establishes the duty and breach elements of negligence only if the injured party belongs to the
    class of persons that the statute was intended to protect, and the injury is of the type against which the statute was
    intended to protect." *Ashwood v. Clark Cnty.*, 930 P.2d 740, 744 (Nev. 1997).

1    independent statutory cause of action).

2        2.   Analysis

3    Sharp alleges that National Fire engaged in the following activities listed in subsection

4    (1) as unfair claims practices:

5        (a) Misrepresenting to insureds or claimants pertinent facts or insurance policy

6        provisions relating to any coverage at issue;

7        (b) Failing to acknowledge and act reasonably promptly upon communications with

8        respect to claims arising under insurance policies;

9        (c) Failing to adopt and implement reasonable standards for the prompt investigation and

10       processing of claims arising under insurance policies;

11       (d) Failing to affirm or deny coverage of claims within a reasonable time after proof of

12       loss requirements have been completed and submitted by the insured;

13       (e) Failing to effectuate prompt, fair and equitable settlements of claims in which

14       liability of the insurer has become reasonably clear; and

15       (n) Failing to provide promptly to an insured a reasonable explanation of the basis in the

16       insurance policy, with respect to the facts of the insured's claim and the applicable law,

17       for the denial of the claim or for an offer to settle or compromise the claim.

18   (Am. Third-Party Compl., 46–47:¶110.)

19       Again, here, having considered the entirety of the parties' evidence, the pleadings,

20   depositions, answers to interrogatories, and admissions on file, the Court finds that Sharp has

21   not presented any competent or significantly probative evidence supporting its factual

22   allegations that National Fire engaged in any of these activities listed in subsection (1).

23   Because of this lack of evidence, the Court cannot find that a reasonable jury could find in

24   favor of Sharp as to this cause of action, even drawing all reasonable inference in Sharp's

25   favor.  Accordingly, there is no genuine dispute of material fact and the Court must find that

National Fire is entitled to summary judgment in its favor.

**IV.     CONCLUSION**

     **IT IS HEREBY ORDERED** that the Motion for Summary Judgment (ECF No. 183) is **GRANTED**.

     **IT IS FURTHER ORDERED** that the Motion for Summary Judgment (ECF No. 184) is **GRANTED in part**.

     **IT IS FURTHER ORDERED** that the Motion for Summary Judgment (ECF No. 188) is **DENIED**.

     The Clerk shall enter judgment accordingly, and this case shall be closed.

     **DATED** this 27th day of December, 2013.

_____
Gloria M. Navarro
United States District Judge